# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DALE ARNOLD, | : | |
|     Plaintiff | : | |
| | : | No. 1:19-cv-750 |
| v. | : | |
| | : | (Judge Kane) |
| TRACY SMITH, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

Before the Court are pro se Plaintiff Dale Arnold ("Plaintiff")'s complaint filed pursuant to 42 U.S.C. § 1983 (Doc. No. 1), motion for reconsideration (Doc. No. 37) of the Court's September 6, 2019 Memorandum and Order (Doc. Nos. 35, 36) denying Plaintiff's motion for a sweat lodge (Doc. No. 17), second motion for summary judgment (Doc. No. 39), Defendants' brief in opposition to Plaintiff's motion for reconsideration (Doc. No. 40), Plaintiff's third motion to appoint counsel (Doc. No. 41), Defendants' motion to dismiss (Doc. No. 45) and brief in support (Doc. No. 46), Plaintiff's third motion for summary judgment (Doc. No. 47), which appears to be Plaintiff's response to Defendants' motion to dismiss, and Defendants' response to the third motion for summary judgment (Doc. No. 49). For the reasons set forth below, the Court will deny Plaintiff's motion for reconsideration, deny as premature Plaintiff's second motion for summary judgment, construe Plaintiff's third motion for summary judgment as his brief in opposition to Defendants' motion to dismiss, deny the motion to dismiss with respect to Plaintiff's claims against Defendants Tracy Smith ("Smith"), Mathew McCoy ("McCoy"), and Michael Wenerowicz ("Wenerowicz") and grant it with respect to Plaintiff's claims again Defendant Wetzel ("Wetzel"), and conditionally grant Plaintiff's motion to appoint counsel.

## I. BACKGROUND

Plaintiff is currently incarcerated at the State Correctional Institution in Benner Township, Pennsylvania ("SCI Benner Township"). In his complaint, Plaintiff alleges that Defendants have violated his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by preventing him from engaging in Native American ceremonial activities in a sweat lodge. (Doc. No. 1.) Plaintiff maintains that on May 4, 2018, he asked Defendant McCoy for a religious accommodation request form so that he could request the provision of a sweat lodge. (Doc. No. 1 at 5.) He sent the form out on June 4, 2018, and on August 21, 2018, Defendants Smith and Wenerowicz denied his request "for compelling governmental interests of safety, security, and fiscal responsibility." (Id. at 5, 12.) As relief, Plaintiff filed the instant case seeking damages and the provision of a sweat lodge. (Id.)

In an Order dated June 7, 2019, the Court granted Plaintiff leave to proceed in forma pauperis and directed service of his complaint upon Defendants. (Doc. No. 14.) On June 24, 2019, the Court received Plaintiff's motion for a sweat lodge. (Doc. No. 17.) In that motion, Plaintiff essentially sought mandatory preliminary injunctive relief in the form of an Order directing Defendants to build and provide him use of a sweat lodge at SCI Benner Township. (Id.)

Defendants returned their waivers of service to the Court on July 8, 2019. (Doc. No. 22.) Ten (10) days later, the Court received Plaintiff's motion for summary judgment, in which Plaintiff maintained that Defendants never responded to his filings. (Doc. No. 23.) On July 26, 2019, Defendants filed a motion to dismiss Plaintiff's motion for summary judgment as premature. (Doc. No. 26.) Defendants subsequently filed a motion for an extension of time to respond to Plaintiff's complaint (Doc. No. 28), which the Court granted on August 2, 2019 (Doc.

No. 30). The Court directed Defendants to respond to Plaintiff's complaint within ninety (90) days of that Order. (Doc. No. 30.)

In a Memorandum and Order dated September 6, 2019, the Court denied Plaintiff's motion for a sweat lodge, granted Defendants' motion to deny Plaintiff's motion for summary judgment as premature, and denied Plaintiff's motion for summary judgment as premature. (Doc. Nos. 35, 36.) In denying Plaintiff's motion for a sweat lodge, the Court concluded that Plaintiff's motion "[sought only] resolution of the ultimate issues presented in his complaint" and did not demonstrate that Plaintiff would suffer irreparable harm if he did not receive the requested relief at that time. (Doc. No. 35 at 4.) The Court also noted that Plaintiff's motion for summary judgment was premature because Defendants had not filed a responsive pleading. (Id. at 4-5.)

On September 23, 2019, Plaintiff filed his motion for reconsideration (Doc. No. 37) and brief in support thereof (Doc. No. 38). Seven (7) days later, Plaintiff filed his second motion for summary judgment. (Doc. No. 39.) Defendants filed their brief in opposition to Plaintiff's motion for reconsideration on October 3, 2019. (Doc. No. 40.) On October 10, 2019, the Court received Plaintiff's brief in support of his motion for summary judgment. (Doc. No. 42.) Defendants filed their brief opposing Plaintiff's motion for summary judgment on October 29, 2019. (Doc. No. 44.) Two (2) days later, on October 31, 2019, Defendants filed their motion to dismiss (Doc. No. 45) and brief in support (Doc. No. 46).

## II.  MOTION TO DISMISS

### A.  Standard of Review

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224,

232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)

(internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### B. Section 1983 Standard

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the

conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

### C. Discussion of the Motion to Dismiss

Defendants seek dismissal of Plaintiff's complaint because: (1) his RLUIPA claim is barred by the First Amendment's Establishment Clause; (2) Plaintiff's First Amendment claim is barred by the Establishment Clause; (3) Plaintiff failed to allege that Defendant Wetzel was personally involved in the alleged violations of his rights; and (4) Plaintiff's claims for damages against Defendants in their official capacities are barred by the Eleventh Amendment. (Doc. No. 46.) The Court considers each argument in turn below.

#### 1. Plaintiff's RLUIPA and First Amendment Claims

Defendants first assert that Plaintiff's RLUIPA claim is barred under the First Amendment's Establishment Clause because "grant[ing] Plaintiff the specific relief he seeks, i.e., the building and maintenance of a sweat lodge at Department [of Corrections ('DOC')] expense, would violate the Establishment Clause." (Doc. No. 46 at 5.) Defendants maintain that they are constitutionally prohibited from funding the building and maintenance of sweat lodges because such actions "would constitute impermissible entanglement" of church and state. (Id. at 6.)

Section 2000cc-1(a) of RLUIPA, which pertains to state inmates, provides that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

6

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Under RLUIPA, "[a] plaintiff-inmate bears the burden to show that a prison institution's policy or official practice has substantially burdened the practice of that inmate's religion." See Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir. 2007). A substantial burden exists "where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." See id. at 280 (emphasis in original).

The First Amendment's Establishment Clause states that "Congress shall make no law respecting an establishment of religion." See U.S. Const. amend. I. In assessing whether an action violates this prohibition, courts apply the three-prong test set forth in Lemon v. Kurtzman, 403 U.S. 602 (1971). That test requires that government actions (1) have "a secular legislative purpose," (2) have a "principal or primary effect" that "neither advances nor inhibits religion," and (3) do not "foster excessive government entanglement with religion." See id. at 612-13 (internal quotation marks and citations omitted).

Defendants recognize that the Supreme Court has rejected a facial challenge to RLUIPA on the basis that it violates the Establishment Clause. See Cutter v. Wilkinson, 544 U.S. 709, 725 (2005). They maintain, however, that the Supreme Court has left open the possibility of an as-applied Establishment Clause challenge to RLUIPA. (Doc. No. 46 at 6.) Defendants assert that Plaintiff's RLUIPA claim is barred under the Establishment Clause because, pursuant to the Lemon test, "there can be no conceivable secular purpose for a Native American sweat lodge," "the funding would advance indoctrination of a particular faith," and "there would be excessive

7

entanglement with the funds expended and the advancement/benefit they accord a single religious group." (Id. at 7-8.) Defendants state that they have "found no case where a court has held that a prison has a duty to fund, build and maintain a sweat lodge, but several that suggest no such duty exists." (Id. at 8.) They recognize that while they "may have [a] duty to permit sweat lodges on prison grounds, providing them a 'space and a place' as it were, the funding, building and maintenance of such structures must be left to non-governmental entities." (Id.)

The Court is not persuaded by Defendants' arguments for dismissal of Plaintiff's RLUIPA claim at this time. The Court agrees that case law exists suggesting that correctional departments do not have a duty to fund and maintain sweat lodges. See, e.g., Sharp v. Gay, No. 2:11 CV 925-ROS, 2014 WL 3556341, at *3-4 (D. Ariz. July 18, 2014) (discussing how inmates within the Arizona Department of Corrections ("ADOC") must rely upon donations from family or friends to obtain wood for sweat lodge ceremonies because the ADOC does not use funds to "purchase materials dedicated to inmate religious use"). However, nowhere in Plaintiff's complaint does he take issue with a refusal to fund and maintain a sweat lodge. Rather, Plaintiff alleges that the denial of a space for a sweat lodge itself violates his rights under RLUIPA as well as the First Amendment. Thus, Defendants' arguments concerning funding and the second and third prongs of the Lemon test do not persuade the Court that Plaintiff's RLUIPA claim is barred by the Establishment Clause. Indeed, the fact that prisons in other states have sweat lodges suggests otherwise. See, e.g., Yellowbear v. Lampert, 741 F.3d 48, (10th Cir. 2014) (noting that a prisoner in Wyoming was seeking access to the prison's existing sweat lodge); Sharp, 2014 WL 3556341, at *3; Farrow v. Stanley, No. 02-567-PB, 2005 WL 2671541, at *9 (D.N.H. Oct. 20, 2015) (noting appellant's argument that "as many as thirty other prisons

8

maintain and operate sweat lodges"). Accordingly, the Court will deny Defendants' motion to dismiss Plaintiff's RLUIPA claim on this basis.

Defendants also maintain that Plaintiff's First Amendment claim is barred by the Establishment Clause because they have a "legitimate, penological reason" pursuant to Turner v. Safley, 482 U.S. 78 (1987), "for [the DOC's] position that it will not fund, build and maintain sweat lodges." (Doc. No. 46 at 9.) Under Turner, a court considering whether a prison regulation or policy is valid must consider: (1) whether the regulation or policy is rationally related to the governmental interest at stake; (2) whether the inmate retains alternative means to exercise the constitutionally protected right; (3) the impact accommodating the asserted right will have on guards and other inmates and the allocation of prison resources generally; and (4) the absence of ready alternatives. See id. at 89-90. However, "such a multi-factored fact-intensive test as Turner's does not generally lend itself to being addressed in the context of a motion to dismiss." See Brothers v. Lawrence Cty. Prison Bd., No. 06-1285, 2008 WL 146828, at *5 & n.7 (W.D. Pa. Jan. 14, 2008). Without further development of the record, the Court is unable to determine whether the prohibition of sweat lodges runs afoul of the Turner test. Accordingly, the Court will not grant Defendants' motion to dismiss Plaintiff's First Amendment claim on this basis.

    **2.    Claims Against Defendant Wetzel**

Defendants next argue that Plaintiff's claims against Defendant Wetzel should be dismissed because Plaintiff has not alleged that Defendant Wetzel was personally involved in the alleged violations of his rights. (Doc. No. 46 at 10-11.) In his brief in opposition, Plaintiff indicates that he would "like to first voluntarily remove Secretary John Wetzel from [the list of Defendants]. Plaintiff has found that he had NO personal involvement with the sweat lodge

accommodation decision." (Doc. No. 47 at 1.) Given Plaintiff's desire to no longer proceed against Defendant Wetzel, the Court will grant the motion to dismiss with respect to his claims against Defendant Wetzel.

## III. PLAINTIFF'S MOTIONS

### A. Plaintiff's Motion for Reconsideration (Doc. No. 37)

As noted above, Plaintiff seeks reconsideration of the Court's September 6, 2019 Memorandum and Order denying his motion for a sweat lodge. He maintains that he "feels he will prevail on the merits, the non-movant party will not suffer irreparable harm, and a preliminary injuncti[on] . . . will be in the public interest." (Doc. No. 38 at 2.) He also alleges that he has suffered irreparable mental harm by not currently having a sweat lodge at SCI Benner. (Id.) A motion for reconsideration is a devise of limited utility, which may "not be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." See Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (citations omitted); see also Baker v. Astrue, No. 07-4560, 2008 WL 4922015, at *1 (E.D. Pa. Nov. 17, 2008). Rather, a court may alter or amend its judgment only upon a showing from the movant of one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence . . . or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." See Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). A motion for reconsideration may not be used as a means to reargue unsuccessful theories or argue new facts or issues that were not presented to the Court in the context of the matter previously decided. See Drysdale v. Woerth, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001).

10

Here, Plaintiff's motion for reconsideration fails to meet the narrowly-defined factors governing motions for reconsideration because it does not identify an intervening change in controlling law, provide any evidence that was not previously available to this Court, or show the need to correct a clear error of law or prevent manifest injustice. Plaintiff has not demonstrated the requisite "potential harm which cannot be redressed by a legal or an equitable remedy following a trial" because he requests immediate relief that seeks resolution of the ultimate issues presented in his complaint. See Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). Accordingly, the Court will deny Plaintiff's motion for reconsideration.

### B. Plaintiff's Second Motion for Summary Judgment (Doc. No. 39)

Plaintiff has filed a second motion for summary judgment on the basis that Defendants have not responded to his first set of interrogatories. (Doc. No. 39.) As the Court informed Plaintiff previously, a motion for summary judgment is premature when, as is the case here, the "defendants ha[ve] yet to file any responsive pleading."[1] See Walter v. Zenk, No. 4:01-cv-1644, 2008 WL 351250, at *2 (M.D. Pa. Feb. 7, 2008). Accordingly, the Court will deny Plaintiff's second motion for summary judgment (Doc. No. 39) as premature. This denial will be without prejudice to Plaintiff's right to file a subsequent motion for summary judgment after discovery concludes[2] or at some other appropriate time. See In re Pettaway, 457 F. App'x 96, 98 (3d Cir. 2012).

---

[1] A motion to dismiss does not constitute a responsive pleading. See Hill v. Everhart, No. 3:05-cv-1346, 2006 WL 2038608, at *4 (M.D. Pa. July 19, 2006).

[2] The Court's Local Rules provide that "[i]n the absence of a discovery deadline set forth in a [C]ourt order, each party to a civil action shall complete all discovery proceedings within six (6) months of the date of the last pleading filed by that party." M.D. Pa. L. R. 26.4.

11

## C. Motion to Appoint Counsel (Doc. No. 41)

As noted above, Plaintiff has filed a third motion to appoint counsel in the above-captioned case. (Doc. No. 41.) Plaintiff maintains that the appointment of counsel is necessary because his "imprisonment will limit his ability to litigate this case" involving complex issues. (Id. at 3.) Plaintiff further asserts that this matter will involve conflicting testimony and that counsel is needed "to handle and show evidence and cross-examine witness[es]." (Id.)

Although prisoners have no constitutional or statutory right to the appointment of counsel in civil cases, district courts have broad discretionary power to appoint counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1). See Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002). In Tabron v. Grace, the Third Circuit developed a non-exhaustive list of factors to aid district courts in determining whether to appoint counsel for such litigants. See Tabron v. Grace, 6 F.3d 147, 155-57 (3d Cir. 1993). Such factors include: the plaintiff's ability to present his case; the complexity of the legal and discovery issues in the case; the amount of factual investigation that will be required; the necessity of expert witnesses; and whether "witness credibility is a key issue." See id. Additionally, "[a]s a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and law." See Montgomery, 294 F.3d at 498-99 (citing Tabron, 6 F.3d at 155). Finally, "[t]he plaintiff's ability to present a case is '[p]erhaps the most significant' consideration and depends on factors such as 'the plaintiff's education, literacy, prior work experience, and prior litigation experience . . . along with a plaintiff's ability to understand English . . . [and] the restraints placed upon a prisoner plaintiff by confinement.'" See Nunuez v. Wetz, Civ. No. 14-cv-0727, 2017 WL 4698092, at *1 (M.D. Pa. Oct. 19, 2017) (quoting Montgomery, 294 F.3d at 501).

The Court concludes that the Tabron factors warrant the appointment of counsel at this time. By denying Defendants' motion to dismiss, the Court has determined that Plaintiff's case "has some arguable merit in fact and law." See Montgomery, 293 F.3d at 498-99 (citing Tabron, 6 F.3d at 155). The Court further notes that in a similar case filed by another inmate at SCI Benner Township seeking a sweat lodge, the Honorable A. Richard Caputo conditionally granted that inmate's motion to appoint counsel. See Order, Banks v. Smith, No. 3:19-cv-427 (M.D. Pa. Oct. 29, 2019) (Doc. No. 38). On December 9 and 12, 2019, counsel entered notices of appearance on behalf of the plaintiff in that matter. See id. (Doc. Nos. 40, 41, 42). Moreover, while Plaintiff has ably proceeded pro se until this point, the Court recognizes that his confinement places significant restraints on his ability to litigate his First Amendment and RLUIPA claims. Plaintiff is cautioned, however, that if the Court is unable to locate counsel to represent him, Plaintiff will be required to continue participating in the in the above-captioned action as a pro se litigant. Because the Court is conditionally granting Plaintiff's motion to appoint counsel, the Court will stay all filing obligations and other deadlines for forty-five (45) days while the Chair of the Federal Bar Association's Pro Bono Committee attempts to find counsel to represent Plaintiff. Should the Court be unable to locate counsel to represent Plaintiff, the Court will then direct Defendants to file their answer to Plaintiff's complaint.

## IV. CONCLUSION

For the reasons set forth above, the Court will deny Plaintiff's motion for reconsideration (Doc. No. 37), deny his second motion for summary judgment (Doc. No. 39) as premature, construe Plaintiff's third motion for summary judgment (Doc. No. 47) and brief in support (Doc. No. 48) as his brief in opposition to Defendants' motion to dismiss, deny Defendants' motion to dismiss (Doc. No. 45) with respect to Plaintiff's claims against Defendants Smith, McCoy, and

13

Wenerowicz and grant it with respect to Plaintiff's claims against Defendant Wetzel, and conditionally grant Plaintiff's motion to appoint counsel (Doc. No. 41). An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
